**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| MAWSON INFRASTRUCTURE GROUP, INC., | : | Case No. 24-12726 (MFW) |
| | : | |
| Alleged Debtor. | : | |
| | : | |
| | : | |
| MARSHALL INVESTMENTS GCP PTY LTD. (f/k/a Marshall Investments MIG Pty Ltd), as trustee for the Marshall Investments MIG Trust, | : | Adv. Proc. No. 25-52482 (MFW) |
| | : | |
| Appellant, | : | |
| v. | : | Civ. No. 25-1196 (JLH) |
| | : | |
| MAWSON INFRASTRUCTURE GROUP, INC., | : | |
| | : | |
| Appellee. | : | |

**MEMORANDUM ORDER**

## I. BACKGROUND

This dispute arises from an involuntary chapter 11 petition (Bankr. D.I. 1[1] (the "Involuntary Petition")) filed on December 4, 2024 (the "Petition Date"), against Mawson Infrastructure Group, Inc. ("Mawson") by three Australian creditors: Marshall Investments GCP Pty Ltd. (f/k/a Marshall Investments MIG Pty Ltd), as trustee for the Marshall Investments MIG Trust ("Marshall"), W Capital Advisors Pty Ltd ("W Capital"), and Rayra Pty Ltd ("Rayra"). On January 10, 2025, Mawson filed an answer contesting the Involuntary Petition. (Bankr. D.I. 16.) Two additional creditors filed

[1] The docket of the involuntary chapter 11 case, , captioned *In re Mawson Infrastructure Grp., Inc.*, No. 24-12726 (MFW), is cited herein as "Bankr. D.I. __," and the docket of the adversary proceeding, captioned *Mawson Infrastructure Grp., Inc. v. Marshall Invests. GCP Pty Ltd.*, *et al.*, Adv. No. 25-52482 (MFW) (the "Adversary Proceeding"), is cited herein as "Adv. D.I. __."

joinders to the Involuntary Petition in Spring 2025. On March 7, 2025, the MIG1 Receivers[2] filed a joinder to the Involuntary Petition. (Bankr. D.I. 61.) On May 27, 2025, John McInerney and Philip Campbell-Wilson of Grant Thornton Australia Limited in their capacity as Joint and Several Liquidators of Mawson Services Pty Ltd (In Liq.) (the "Mawson Services Liquidators," and, together with Marshall, W Capital, Rayra, and the MIG1 Receivers, the "Petitioning Creditors") also filed a joinder to the Involuntary Petition. (Bankr. D.I. 126.)

Discovery between Mawson and the Petitioning Creditors began in January 2025 and generated various disputes, including two motions to compel filed by Mawson (Bankr. D.I. 78, 219), and an order directing the issuance of Letter Requests under the Hague Convention for Mawson to obtain the deposition of Mawson's former Australia-based CEO James Manning regarding, among other things, his role in facilitating the involuntary petition. (Bankr. D.I. 124.)

On May 4, 2025, Mawson filed a motion seeking, among other things, a bond under section 303(e) of the Bankruptcy Code. (Bankr. D.I. 101 (the "Bond Motion").) Section 303(e) permits a bankruptcy court to order petitioning creditors to file a bond to indemnify the involuntary debtor for amounts that could later be assessed under section 303(i). *See* 11 U.S.C. § 303(e).[3] Section 303(i) generally provides that a debtor may obtain a money judgment against its petitioning creditors in certain specified situations.[4]

---

[2] MIG1 stands for MIG No. 1 Pty Ltd., an Australian subsidiary of Mawson that Marshall placed in liquidation in Australia.

[3] Section 303(e) provides: "After notice and a hearing, and for cause, the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section." 11 U.S.C. § 303(e).

[4] Section 303(i)(1) provides: "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this section, the court may grant judgment – (1) against the petitioners and in favor of the debtor for – (A) costs; or (B) a reasonable attorney's fee . . . ." 11 U.S.C. § 303(i)(1).

On August 11, 2025, the Bankruptcy Court held a hearing on the Bond Motion and, as relevant here, directed the Petitioning Creditors to post a bond in the amount of twice the attorneys' fees and costs incurred by Mawson from the Petition Date through July 31, 2025, to secure a possible future award under section 303(i)(1). (*See* D.I. 15, Ex. 2 (Aug. 11, 2025 Hr'g Tr.) at 49-51.) Thereafter, Marshall filed a motion for rehearing with respect to the Bond Motion. (Bankr. D.I. 164.) After a hearing held on September 5, 2025 (D.I. 15, Ex. 3 (Sept. 5, 2025 Hr'g Tr.)), the Bankruptcy Court entered an order on September 11, 2025 (Bankr. D.I. 205 (the "Bond Order")), which directed the Petitioning Creditors to post a bond in the amount of $1,500,000 under section 303(e) of the Bankruptcy Code. On September 25, 2025, Marshall filed a notice indicating that it had obtained the required bond. (Bankr. D.I. 210.) Marshall also filed a Notice of Appeal with respect to the Bond Order. (Bankr. D.I. 211.)

On August 25, 2025, Marshall also moved to dismiss (Bankr. D.I. 163) the involuntary proceeding that it had commenced with Rayra, an entity which took assignment of a small portion of Marshall's asserted claim—equivalent to approximately 0.41% of Marshall's asserted claim—shortly before the Petition Date, which implicates Bankruptcy Rule 1003(a).[5] (*See* Bond Motion at ¶¶ 66-75.) On November 4, 2025, the Bankruptcy Court dismissed the involuntary petition with prejudice. (Bankr. D.I. 265.) The Bankruptcy Court's dismissal order required that if Mawson intended to seek attorney's fees and costs or damages caused by the Involuntary Petition, it do so by filing an adversary proceeding within 60 days. (*Id.*)

On December 29, 2025, Mawson filed its complaint initiating the Adversary Proceeding

[5] Bankruptcy Rule 1003(a) provides, in relevant part: "An entity that has transferred or acquired a claim for the purpose of commencing an involuntary case under Chapter 7 or Chapter 11 is not a qualified petitioner." Fed. R. Bankr. P. 1003(a). The rule further requires that "all documents evidencing the transfer" of a claim be attached to the petition. The assignment agreement between Marshall and Rayra was not docketed until December 20, 2024, sixteen days after the Petition Date.

against the Petitioning Creditors seeking relief under section 303(i). (Adv. D.I. 1 (sealed); Adv. D.I. 5 (redacted).) In light of an ongoing mediation in the bankruptcy proceeding, the parties asked this Court to set a briefing schedule with respect to the merits of the appeal only after the Bankruptcy Court had the chance to rule on Marshall's November 12, 2025 motion to strike certain items from Mawson's designation of the record on appeal. (Bankr. D.I. 267 (the "Motion to Strike").) (*See* D.I. 25 at 4.) The parties committed to informing this Court within seven days of a ruling on the Motion to Strike. (*Id.*) The Court approved the parties' request to delay briefing by order dated May 27, 2026. (D.I. 27.) The Court has received no further update from the parties in over three months. The docket of the Adversary Proceeding reflects that discovery is ongoing.

In the meantime, Mawson has moved to dismiss the appeal (D.I. 15 (the "Motion to Dismiss")) on the basis that the Bond Order is not a final order and is not otherwise appealable. The Motion to Dismiss is fully briefed. (D.I. 15, 18, 20.) No party requested oral argument. For the reasons below, the Motion to Dismiss will be granted.

## II. JURISDICTION AND APPLICABLE STANDARDS

District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(1).

Section 158(a)(3) further authorizes appeals "with leave of the court, from other interlocutory orders and decrees . . . ." 28 U.S.C. § 158(a)(3). Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. In deciding whether to authorize an interlocutory appeal under section 158(a)(3), district courts typically follow the standard set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from a district court to a court of appeals. *In re Essar Steel Minnesota LLC*, 607 B.R. 409, 414 (D. Del. 2019). Under section 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves

a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *Id.* Because piecemeal litigation is disfavored, the party seeking review of an interlocutory order must establish "exceptional circumstances to justify a departure from the basic policy of postponing review until after the entry of final judgment." *Id.* at 414-15 (internal citations omitted). Additionally, under Bankruptcy Rule 8004(a), a party seeking leave to appeal an interlocutory order must move for leave to appeal with their notice of appeal. Fed. R. Bankr. P. 8004(a)(2).

Here, Marshall did not file a motion for leave to appeal and does not argue that the standard to take an interlocutory appeal has been met. Rather, Marshall contends that the Bond Order is a "final order" under 28 U.S.C. § 158(a)(1) or, alternatively, that its appeal may be heard under the collateral order doctrine.

## III. ANALYSIS

### A. Consideration of the Motion to Dismiss Is Appropriate at this Time

To begin, Marshall argues that the Motion to Dismiss should be denied (or stricken) because it was filed by Mawson in violation of the Court's Standing Order, dated July 19, 2023, establishing procedures to govern the mediation of appeals from the Bankruptcy Court (the "Standing Order"). The Standing Order establishes "mandatory mediation procedures [that] shall apply to all appeals to this Court from the Bankruptcy Court" and provides that if the parties proceed with mediation, "[a]ll briefing in connection with the appeal and all motion practice regarding the appeal shall be deferred during the pendency of mediation unless the Court determines otherwise." (Standing Order ¶ 1.) After the filing of the appeal, the parties agreed to further mediation with a mediator, pursuant to a stipulation approved by the Bankruptcy Court on November 24, 2025. (D.I. 18, Ex. A (the "Stipulation").) At the time Marshall opposed the Motion to Dismiss, mediation was ongoing. The

mediation has since been cancelled (*see* D.I. 25 ¶ 7), this Court issued an Order withdrawing the matter from its own mediation process (D.I. 27), and the Motion to Dismiss has been fully briefed. Meanwhile, months have gone by without any update from the parties.

Marshall offers no authority suggesting that the Standing Order or Stipulation prevents the Court from issuing an Order regarding its jurisdiction to adjudicate this appeal. Striking the Motion to Dismiss as untimely or procedurally improper would serve no purpose, as any such order would be without prejudice to Mawson's right to re-file the motion. More importantly, the issues raised involve the Court's jurisdiction to hear this appeal in the first instance and thus would need to be addressed by the Court even if not raised by the parties. Deciding the Motion to Dismiss at this juncture is appropriate.

### B. The Court Lacks Jurisdiction to Hear this Appeal Because the Bond Order is Not a Final Order

In the bankruptcy context, orders are "final" under section 158(a) if they "fully and finally resolve[] a discrete set of issues, leaving no related issues for later determination." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 308-09 (3d Cir. 2018) (quoting *In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990)). In examining this question, courts look to "(1) the impact of the matter on the assets of the bankruptcy estate, (2) the preclusive effect of a decision on the merits, and (3) whether the interests of judicial economy will be furthered by an immediate appeal." *Id.* at 308 (internal citation omitted).

The language of section 303(e) supports the conclusion that a bankruptcy court's order requiring petitioning creditors to post a bond is not a final order under section 158(a)(1). Section 303(e) provides that: "after notice and a hearing, and for cause, the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court ***may later allow under subsection (i) of this section***." 11 U.S.C. § 303(e) (emphasis added). The text of section 303(e)

thus contemplates that there will be further proceedings to determine whether the putative debtor may recover from the petitioning creditors under section 303(i). Indeed, the Bond Order was issued under section 303(e) to protect Mawson ***in the event*** the involuntary petition was dismissed and an award is made under section 303(i), therefore necessitating further proceedings. (*See* Sept. 5, 2026 Hr'g Tr. at 47:7-48:11.) At the September 5, 2025 hearing on Marshall's motion for rehearing of the Bond Motion, the Bankruptcy Court stated that in the event Mawson sought a § 303(i) award the court would "schedule it accordingly." (*Id.* at 60:8-12.) In connection with the dismissal of the Involuntary Petition with prejudice, the Bankruptcy Court set a deadline requiring Mawson to file an adversary proceeding seeking an award under section 303(i) award within 60 days of its dismissal order. (Bankr. D.I. 265.) The Adversary Proceeding docket reflects that discovery is ongoing and dispositive motions are pending. (Adv. D.I. 7, 19, 32, 47.)

Turning to the three relevant factors, as Mawson points out, in requiring a bond, the Bankruptcy Court was clear that it was *not* deciding the merits of whether the involuntary petition should be dismissed or whether a section 303(i) award was appropriate. (*See* Sept. 5, 2026 Hr'g Tr. at 47:7-14 ("You know, the purpose of 303(e) is to protect the debtor in the event that the involuntary is dismissed and an award is made under 303(i). ***It's not to actually decide the merits of either of those matters***.") (emphasis added); Aug. 11, 2025 Hr'g Tr. at 49:9-13 ("[W]ell thankfully, I'm not deciding the facts today. . . . I agree that we need a full evidentiary hearing to decide whether the involuntary petition was filed in bad faith and meets the requirements of the Code for filing.").) The Bond Order thus has no preclusive effect and no current financial impact on Mawson. *See In re Energy Future Holdings*, 904 F.3d at 308. Nor will an appeal of the Bond Order further the interests of judicial economy because the questions of the Petitioning Creditors' bad faith and the validity of the involuntary petition remain to be decided by the Bankruptcy Court. *Id.*

Finally, the limited caselaw supports Mawson's argument that the Bond Order is not a final order. Notably, the Third Circuit has dismissed, for lack of jurisdiction, the appeal of a supersedeas bond order. In *In re Tribune*, a creditor appealed a bankruptcy court's plan confirmation order, and filed a motion for stay of the confirmation order pending its appeal. *See In re Trib. Co*., No. 08-13141 (KJC) (Bankr. D. Del.), D.I. 12070, 12077, 12080. The Bankruptcy Court granted the creditor's request for a stay pending appeal, conditioned upon the creditor posting a $1.5 billion supersedeas bond. *Id*., D.I. 12320 (Bankr. D. Del. Aug. 22, 2012). The creditor filed an emergency motion in this district seeking modification of the bond requirement, which the court denied. *See In re Trib. Co. (Aurelius Cap. Mgmt., LP v. Trib. Co. et al.*), No. 12-1072, D.I. 11 (D. Del. Aug. 27, 2012). The creditor further appealed the supersedeas bond requirement to the Third Circuit, which dismissed the appeal for lack of jurisdiction based on its determination that the order was "not final or otherwise appealable as an injunction." *See In re Trib. Co. (Aurelius Cap. Mgmt., LP v. Trib. Co. et al.*), Case No. 12-3437 (3d. Cir. Sep. 10, 2012) (citing *Habitat Educ. Center v. U.S. Forest Serv*., 607 F.3d 453, 456 (7th Cir. 2010) (orders requiring the posting of a bond or other security are generally not appealable immediately, unless the bond is both higher than necessary and beyond the plaintiff's financial capacity)).

While the number of past appeals involving specifically section 303(e) bond orders is limited, the parties have cited (and the Court is aware of) only one unreported case in which a court addressed the merits of an appeal from a section 303(e) bond order outside of the context of an appeal from a plainly final order. *Solby+Westbrae Partners et al., v. Fisher Island Invests., Inc.*. Case No. 1:11-cv-22050 (S.D. Fla Mar. 22, 2012). But that court did not expressly consider whether the bond order on appeal was a final order under section 158(a). *See id.* And it appears that all other courts to have considered a section 303(e) bond order have done so only on appeal from a plainly final order, such as an order dismissing or entering an Order for Relief with respect to an involuntary petition, or an

order awarding damages under section 303(i). *See In re Funnel Sci. Internet Mktg., LLC*, 551 B.R. 262, 272 (E.D. Tex. 2016) (appeal from "final judgment" resolving putative debtor's section 303(i) claims); *In re Hutter Assocs., Inc.,* 138 B.R. 512, 513 (W.D. Va. 1992) (appeal from denial of motion to vacate Order for Relief); *In re Secured Equip. Tr. of E. Airlines, Inc.*, No. 91-5049, 1992 WL 295943, at *1 (S.D.N.Y. Oct. 8, 1992) (appeal from order dismissing petition for failure to post bond).

Marshall argues that the Bond Order is final under the Third Circuit's "flexible, pragmatic approach to determining whether an order of the Bankruptcy Court is final." (D.I. 18 at 6 (quoting *Hylland v. Nw. Corp.* (*In re Nw. Corp.*), 319 B.R. 68, 72 (D. Del. 2005) (citing *In re W. Elecs., Inc.*, 852 F.2d 79, 81 (3d Cir. 1988)).) According to Marshall, the Bond Order fully and finally resolved the discrete question of whether the Petitioning Creditors should have to post bond and how much. (D.I. 18 at 7-8.)

The Court disagrees. As an initial matter, almost any interlocutory order could be characterized as "finally" deciding the "discrete" question that it answers. That does not make an order "final" for purposes of section 158(a).

The Bond Order is inextricably linked with Mawson's claims for damages under section 303(i) because the express purpose of a bond under section 303(e)—and by extension, the Bond Order—is to protect Mawson if Marshall (and the other Petitioning Creditors) are ordered to pay Mawson's expenses incurred in defending the involuntary proceeding under section 303(i). Additionally, the order dismissing the Involuntary Petition specifically preserved Mawson's right "to seek recovery pursuant to 11 U.S.C. § 303(i) of, (a) attorneys' fees and costs, (b) any damages proximately caused by the Involuntary Petition, and (c) punitive damages . . . ." (Bankr. D.I. 265 at ¶ 3.) Ultimately, Mawson will only be entitled to collect on the bond if it prevails in its section 303(i) claims. If those claims fail or are dismissed for any reason Marshall will be entitled to withdraw its bond. Thus, Marshall's argument that the Bond Order fully resolved a "distinct dispute" is unavailing.

(D.I. 18 at 8.) Nor is the Court persuaded that the Bond Order will be effectively unreviewable if an appeal is not heard now. *Cf. Petroleos Mexicanos Refinacion v. M/T KING A (EX-TBILISI),* 377 F.3d 329, 335-36 (3d Cir. 2004) (holding that a district court's refusal to vacate a pre-trial seizure was not immediately reviewable, and explaining that the seizure order would be fully reviewable following final judgment).

Because the Bond Order is not final, even under the Third Circuit's flexible, pragmatic approach to finality, the Court lacks jurisdiction to hear this appeal under section 158(a).

### C. The Court Lacks Jurisdiction to Hear the Appeal Under the Collateral Order Doctrine

Marshall argues that the interlocutory order is reviewable under the collateral order doctrine established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949), which provides a narrow exception to the general rule permitting appellate review only of final orders. A non-final order is appealable under the collateral order doctrine where it (1) conclusively determines a disputed question, (2) resolves an important issue that is completely separate from the merits of the dispute, and (3) is effectively unreviewable on appeal from a final judgment. *Petroleos*, 377 F.3d at 334.

As to the first requirement, the Bond Order did not resolve any legal question. There is no dispute that the Bankruptcy Court had authority to require the Petitioning Creditors to post a bond under section 303(e). Marshall asserts that the Bankruptcy Court's entry of the Bond Order without conducting an evidentiary hearing constitutes "an important issue separate and apart from the merits of any [] 303(i) action." (D.I. 18 at 10.) Setting aside Mawson's argument that Marshall failed to object to the Bankruptcy Court on the motion for bond without an evidentiary hearing and raised it for the first time in its Motion for Rehearing, the one non-binding case Marshall cites for the proposition that due process requires a hearing before an order requiring a bond does not state that an evidentiary hearing is required. *See In re Apollo Health St., Inc.,* No. 11-22970, 2011 WL 2118230,

at *4 (Bankr. D.N.J. May 23, 2011). The Court agrees that Marshall's due process argument is not the kind of important legal issue that meets the narrow exception.

As to the second requirement, Marshall asserts that the Bankruptcy Court's Bond Order is "completely separate from the merits" of the 303(i) proceedings. (*See* D.I. 18 at 10.) This assertion is contradicted by the record and the plain language of section 303(e). While the Bankruptcy Court did not resolve any questions regarding the propriety of the involuntary petition before ordering the bond, its analysis involved an examination of the same contested facts to be determined in the section 303(i) proceedings. The Bankruptcy Court entered the Bond Order based on its finding that there was "sufficient cause to determine that there was a basis for award under 303(i)." (Sept. 5, 2025 Hr'g Tr. at 48:7-11 ("[I]n establishing or ordering a bond, the Court is not deciding the merits of the arguments, but only … whether there was sufficient cause to determine that there was a basis for an award under 303(i)").) While court did not determine that the Petitioning Creditors acted in bad faith, its decision is nonetheless intertwined with the merits of Mawson's pending 303(i) claims.

Finally, consistent with decisions from various jurisdictions, the Bond Order will be fully reviewable on appeal from a final 303(i) award. *Micron Tech., Inc. v. Longhorn IP LLC*, 161 F.4th 1374, 1381 (Fed. Cir. 2025) ("Generally, a requirement to post a security is not effectively unreviewable following final judgment because repayment of the security with interest would furnish complete relief to an improperly granted bond."); *Kensington Int'l Ltd. v. Republic of Congo,* 461 F.3d 238, 240 (2d Cir. 2006) ("[O]rders granting security are not appealable because they fail to satisfy the third prong of the collateral order doctrine test: The party ordered to post security may obtain complete relief on appeal from final judgment."); *United States v. Quintana-Aguayo*, 235 F.3d 682, 684-85 (1st Cir. 2000) (holding that pre-trial order seizing ranch was not immediately appealable); *PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 640 (9th Cir. 1988) (provisional writ of attachment was not immediately appealable under collateral order doctrine);

*Hitachi Zosen Clearing, Inc. v. Tek-Matik, Inc.*, 846 F.2d 27, 29 (6th Cir. 1988) (order requiring posting of a bond or other security device as a condition to grating of preliminary injunction was not immediately appealable under collateral order doctrine). Marshall cites *Cohen* for the proposition that the district court's decision in *Cohen* was effectively unreviewable after final judgment, and thus that the Bond Order will be unreviewable as well. (D.I. 18 at 11.) In *Cohen,* however, the district court denied the defendant's motion to require the plaintiff to post a bond. *See Cohen*, 337 U.S. at 545-46. Unlike the Bond Order that Marshall seeks to appeal, orders denying a bond are effectively unreviewable upon final judgment and have been held to satisfy the collateral order doctrine order. *See, e.g.*, *Kensington*, 461 F.3d at 240-41 (explaining that orders "vacating, dissolving, or denying attachment" may be appealable as collateral orders where they "satisfy *Cohen* . . . and present an important question of law," while "orders granting security are not appealable because they fail to satisfy the third prong of the collateral order doctrine test: The party ordered to post security may obtain complete relief on appeal from final judgment.").

## IV. CONCLUSION

For these reasons, the Motion to Dismiss (D.I. 15) is GRANTED, and the Clerk is directed to CLOSE Civ. No. 25-1196 (JLH).

Entered this 2nd day of September, 2026.

________________________________
THE HONORABLE JENNIFER L. HALL
UNITED STATES DISTRICT JUDGE